17-0112. People versus the accept. Next With the lawyers who are going to argue the case, please approach the bench. Please introduce yourself to the court. Good morning, Your Honors. My name is Linda Olthoff, with the State Appellate Defender, and I represent Faith v. Makal. Could you spell your last name for me? O-L-T-H-O-F-F. Thank you. Good morning, Your Honors. Assistant State Attorney Alan Spellberg, representing the people of the State of Illinois. Are you going to reserve some time for rebuttal? Yeah, maybe two or three minutes would be fine. All right, let's proceed. Faith Makal pled guilty to retail theft in exchange for a sentence of one year, only after she asked her attorney, will there be any problems with immigration? Her attorney said, no, you have a green card, there will be no problem. Can I ask a question? What is the prejudice here? The prejudice here is that if we look at the standard that has been set for Thinley, she put evidence on the record, or there is evidence, that at the time of her plea, being deported was of importance to her. She asked her lawyer at the time that she pled guilty, before she pled, is this going to be a problem for her? But the trial judge specifically states in every single criminal case that the consequences of your plea may have the consequences of being deported. And so she clearly knew about it, and so how can we then say, well, she knew about it, but it's not good enough? Well, I think there are two problems that happened here. She knew, or she was aware, based on the court's admonishments, she may be deported, but she also had a lawyer telling her she would not be deported, specifically contradicting and negating what court's admonishments trump whatever a lawyer tells her. Pardon the pun. Well, they are formality, and I think that, I mean, they're given in every case, right? And so... Not for her. This is her case. I'd like to think that they actually listen to what the judge is saying when they're accepting the plea. Right. We would hope so. When the trial court was giving her admonishments, did she ever once question the fact that she may or may not be deported? No. Did she ever indicate any type of reservation on the record that she may or may not be deported if she accepts the plea? Not on the record of the plea colloquy. Well, then how are we supposed to make a determination of where the prejudice is based on the standard that the Supreme Court laid down in Lee? Because in Lee, when Lee talked about contemporaneous evidence, they meant evidence that something happened at the time of the plea hearing that shows this was of importance to the defendant. In Lee, most of that evidence came out at an evidentiary hearing in a post-plea proceeding, as it did here. Now, you did have the minor addition where the court, after it gave the admonishments, you could be deported. Does that affect your guilty plea? Or would that affect your guilty plea? The court didn't follow up here. And I don't think you can expect Baeta to speak up. Well, what was the court supposed to do here? I mean, the court was verbatim repeating what was in the statute. Right. The court did exactly what it was required to do. But what we're discussing is what counsel did wrong and whether counsel's actions predated Baeta. And if we look at… Did the attorney agree that he had told her she wouldn't be deported in the hearing? The attorney, the plea counsel, never testified. Okay. But was there anybody other than Baeta who testified? An immigration attorney testified as to the consequences of her plea. But he wasn't there during the… At the time of the plea. Yeah. No. And in the evidentiary hearing, he kind of equivocated whether or not she was really aware of what the consequences were because weren't there two prior convictions that were also added on to the notice when the immigration filed the charges against her? That's correct. Yes. There are two other retail thefts that constituted, because they had a sentence of less than a year, were constituted crimes of moral turpitude, which is more of a broad classification. It's never, you know, crimes that constitute moral turpitude are not enumerated anywhere. There are defenses you can move to cancel removal proceedings in those situations. So, yes. But here, what happened is she pled guilty to a year. And so, under statute, that is enumerated. Retail theft with a year sentence is an aggravated felony. And the immigration attorney testified her only defense to that would be if she were maybe seeking asylum. And there's nothing in the record to suggest that she had any reason to be seeking asylum or had any intent to do that. Would she have had a defense to this case if she proceeded to try? Well, we don't know based on this record, but under – Is there a case law that says that if, you know, if a person has no defense to an action, they're not prejudiced? Well, in this situation, the most recent authoritative case law is the United States Supreme Court decision in People v. Lee, which recognized the extraordinary and severe impact of deportation and said, we're not going to look at the likelihood of success at trial or whether you have a plausible defense. We're looking as to whether this was because it's – to really a prison term to many defendants. And so, Lee said we look to whether there's some evidence that this was important to the client at the time they pled guilty. And are there special circumstances such as significant ties to this country that further exacerbates that prejudice? So, can we go back to the evidentiary hearing based on what you just stated? The evidentiary hearing, she said that she was nervous, that she was disoriented, she was crying. But that she never questioned the admonishment that the trial judge administered at the sentencing. And that she never asked for an explanation about the admonishment, whether or not this was going to affect her status here in this country. So, if we look at Lee and we look at what the record provides in regards to the evidentiary hearing, we have to follow Lee or don't we have to follow Lee? Yes, you should follow Lee. All right. Where's the contemporaneous evidence that tells us otherwise? As in Lee, where there's an evidentiary hearing post-plea, that is where most of the evidence came out as to what counsel told the client and what the client wanted to do as here. That was the evidence of what happened at the time of the plea to show that this is paramount importance. So, the evidence in Lee was, I asked my attorney, what's going to happen? Am I going to be in trouble if I plead guilty? And the lawyer said, no, you're okay. And that happened not at the plea colloquy, but in a subsequent proceeding. Here too, subsequent evidentiary hearing, the client said, I asked my attorney, are there going to be deportation problems? And my attorney said, no, you have a green card. So, while there was some indication in Lee where, you know, the court followed up and said, is there, will this affect your plea, there was no follow-up here. And the court isn't required to follow up, but neither is the defendant required to follow up here. If someone's standing in front of the trial judge, and the trial judge specifically follows the exact language in the statute and gets affirmation after the admonishment, you're requiring now the trial judges to sort of second-guess this and just, you know, then inquire further? No. No, I don't think that the court is required to follow up. It so happened that it did in Lee. But I also don't think that the client is required to speak up and say, you know, when her, in this case, attorney just said, there's not going to be a problem. And if she speaks up, the court likely tells her, talk to your attorney, you're represented. And she talks to her attorney, and what is he going to tell her different than what he just told her prior to the plea? You don't have to worry about it. And that's what happened in Lee. The court gave these, you know, equivocal admonishments, you could be deported, is that a problem? And the client said, I don't understand. And the attorney said, you're okay, you're not going to be deported. And the court there found prejudice, right? And so it didn't say that the court's admonishments cured any prejudice. So the court there, too, admonished. Well, would you agree that if we reverse this case and she's brought back here and retried the case and found guilty, she would then be subject to deportation again, wouldn't she? She would. If she was found guilty, yes, she would be subject to deportation. But that is no defense that she has. Well, I don't know. She pled guilty, and I don't know if she has a defense. Maybe there was a case of identification, or maybe she had – I don't know. But Lee has said that that is not a consideration when we're talking about deportation consequences. And don't we also have another problem with this record? Because we don't know if it was this last offense that was the chargeable offense that resulted in her deportation, or it was the two prior convictions. The immigration lawyer who testified at the adventurer hearing indicated that, you know, he wasn't certain which is the one that caused the clip. Well, I don't know that they testified that they weren't sure which one. I know that there was a status hearing prior to the adventurer hearing where the judge asked why was she deported, and her public defender said, because of this case. And I also – That's not what the immigration lawyer said. So the immigration lawyer, when they were discussing the differences between mandatory deportation with an aggravated felony and crimes of moral turpitude, said that if she were subject to the moral turpitude crimes, she would have had some defenses. She may have had some defenses. This was the same attorney who represented her during the deportation proceedings. He never indicated that, oh, we, you know, we put up a defense to the crimes of moral turpitude, or we move to cancel the removal proceedings. And, in fact, it wouldn't even make sense for the government to seek to remove her based on crimes of moral turpitude, which would cause, you know, where she could put up a defense or move to cancel removal, when it had this thing in an aggravated felony. And so even if they did try to remove her based on crimes of moral turpitude and that failed, that had this aggravated felony, she would be gone for sure. So I think from the record here, you can infer that she was deported based on this aggravated felony. Okay. Why don't you save some time for rebuttal. I will do that. Thank you, Your Honors. Good morning again, Your Honors. Assistant State's Attorney, Alan Spellberg, representing the people. As you pointed out, Your Honor, this case all comes down to prejudice. And the reason why that is is that the people are not contesting that the defendant established the First Prong of Strickland, that based upon her testimony, her attorney telling her that she would not face any deportation charges, or something along those lines, that that amounted to deficient performance under the First Prong of Strickland. But that's not the extent of the Court's analysis. Instead, as the U.S. Supreme Court has made clear in Padilla, in Lee, as the Illinois Supreme Court made clear in Valdez, as this Court made clear in Enzueta, and even in the prior Rule 23 in this case, the defendant has to establish both prongs under Strickland. And that's where the defendant is unable to meet her burden, because there is no demonstration of prejudice in this case. And how do we know that? We know that based upon what the U.S. Supreme Court said in Lee. When Lee said that post hoc assertions of, I would not have pled guilty if I had known the deportation consequences, are not sufficient by themselves. Instead, there has to be contemporaneous evidence to corroborate the claim. In Lee, there was extensive contemporaneous evidence to corroborate the claim. The U.S. Supreme Court made that clear, because in the midst of the plea colloquy, when the judge gave the admonishments about potential deportation consequences, the defendant spoke up immediately and said, wait a minute, wait a minute, that doesn't make any sense. That's not what my attorney told me. And the attorney said, oh, don't worry about it. And this is all borne by record. Don't worry about it. It's just a formality. And then it went out. The judge didn't do anything in that case to ensure that the defendant understood the significance of the admonishment. This case, as you recognize, is completely different. The trial judge, at the time of the plea, gave the admonishments. There was no response at all. The trial judge followed the law as required and had no reason to suspect that there was any concern or misunderstanding on behalf of the defendant. And so all we have in this case is the defendant's own self-serving post hoc assertions that she suffered prejudice. But that isn't enough. As I said, Lee says that. The Valdez case says that as well. There has to be additional information. They did not establish from the defense attorney, from the public defender who represented her at the plea, that he had said that. So, again, that absence of those additional facts meant that she failed to meet her burden on prejudice, which is exactly what the trial court held here. And we know that, in addition, based upon the Valdez case, because Valdez, which was decided by the Olmstead court right before the judge made his ruling in this case, specifically said that even when you have a failure of the attorney to provide the requisite information to his client, it is required by Padilla, even when that happens, the judge's giving of the 113-8 admonishment is sufficient to ameliorate any prejudice because the defendant is put on notice that there could be deportation consequences, and it's up to the defendant then to decide what to do. There's no obligation. Let me ask this question. In reference to the notice, counsel raised the issue about this is an aggravated felony. So, therefore, counsel should have been aware that it's a possibility that she could have been deported. Your Honor, and that's why I started off by saying we're not contesting the first one. That's right. That it was an aggravated felony and not just simply crimes of moral turpitude. But that precise issue was addressed by this court in Inzueta, which said that whether or not it's the near certainty that you're going to be deported based upon an aggravated felony or it's just the passability or the strong passability based on the crimes involving moral turpitude is irrelevant because the would versus may versus should versus could doesn't make a difference because from a prejudice standpoint, the admonishments by the judge telling the defendant there are potential deportation consequences, you need to figure this out, is enough to trigger that sort of obligation to take the next step. Well, what about counsel's argument that the trial court here should have done more? I don't know what more the trial judge could have done. One thing I noticed when I was reading through the record was that the defendant, when she was testifying via Skype, was saying that she was crying throughout the plea proceeding. And the judge was surprised at that. He indicated that he didn't remember anything like that. And, unfortunately, I haven't seen the transcript of the plea proceeding myself, but I'm fairly certain that it doesn't reference any crying in that regard. So I can't believe that the judge would have ignored some sort of outward manifestation of the defendant being surprised or distraught over this any more than any other defendant would be at the thought of pleading guilty and going to prison. And so I don't know what else the judge could do. The judge, in this case in particular, clearly and accurately followed the law. The statute said to admonish the defendant in this way, and he did. And the defendant accepted that, went to prison, and pled guilty in exchange for the agreed-upon one year in the Illinois Department of Corrections, and went, I won't say happily, but willingly. And so I'm not sure what else could have been done by the judge. There was no doubt that this was a fully knowing and intelligent plea. Counsel is correct that under Lee, the defendant at this stage of the post-conviction proceedings, or at any stage, does not have to show that she had a viable defense or was actually innocent. Lee made it clear that that didn't apply, as did Hughes and Valdez here in Illinois before that. But what she does have to show is that she would not have pled guilty if she had known of the deportation consequences. And the problem that she does is because she did know about the deportation consequences, or at least enough to put her on notice of the deportation consequences. And so that's why the trial court here made the proper ruling, found that the defendant had failed to meet her burden under the second prong of Strickland, and denied the post-conviction petition. And it's for those reasons that we ask this court to affirm the trial court's ruling. Thank you. Thank you. First, I would just like to address counsel's point that this was a self-serving post hoc claim. What is post hoc about the claim that she made that she said at the time of her guilty plea, what are the consequences? It's not like she stood that there's nothing that ever happened at the time of the guilty plea. At that time, you know, I'm sure there are clients that they say nothing. Counsel says nothing. Oh, and they get deported. Oh, they were, you know, now. But she expressed this concern at the time of the guilty plea. That is not post hoc. Also, as to prejudice, which I did not bring up completely before, similar to Lee, the consequences here were she had been in the country for 20 years. Her child had been born here and is still here. Was maybe seven or eight years old at the time of the plea. No evidence on the record that she had any significant ties with Poland. And the other point that I would like to discuss in response is the significance of the mandatory versus the possible consequences or possible deportation. Padilla, which is. . . It depends on what the policy is of the Immigration Department. It depends. I mean, there was a trend in the early 2000s to deport everyone who had a gun case or deport. So if you want a mandatory rule, how do you address the fluidity of what the immigration policy is? Well, I don't think that there needs to be a mandatory or per se rule. I'm sorry. That's what you just said. Yeah, like a per se rule. But when the consequences are mandatory, that's not fluid. It's enumerated in the statute. This aggravated felonies, you must be deported. You cannot try to cancel your removal. You cannot move to cancel removal. And the significance of that, of mandatory versus possibility, was first enunciated in Padilla. And I think now it was even further reiterated in People v. Lee where there it was the consequences were mandatory. The court's equivocal admonitions did not cure that. And the cases relied on by counsel were all decided pre-Lee. Valdez, and I don't think Valdez contradicts our position here because that was a May case where he may be deported. Counsel was quiet, didn't give him bad advice, just gave no advice. And so the court said where counsel only has to tell you you may be deported, it's enough for the court to say to give those admonishments with counsel's absence or silence. Unzoita, similarly, was decided without the benefit of the guidance of Lee. And there too, counsel did not affirmatively give bad advice that negated what the court might have said. And finally, in People v. Horay, which was decided post-Lee in the Second District Appellate Court, it was mandatory deportation. Counsel said, well, you may be deported. The court gave the admonitions, and the Second District Appellate Court said, And that was a first-stage PC, and you've done enough to establish prejudice. And I would also like to note that as far as the prejudice prong goes, this Court has previously found that Gaeta McCall was prejudiced by counsel's lack of advice after second stage. Anything that happened at third-stage evidentiary hearing only strengthened and bolstered with testimonial evidence that this Court has previously determined. Thank you. Thank you. I think the briefs were excellent, the arguments were excellent, and you gave us a very interesting case, and we will take it under advisement. We will now take a break, so we're going to change panels.